IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE JAMES ROTH, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION |
| KILOLO KIJAKAZI, Commissioner of Social Security | : No. 22-cv-01503-RAL |
| Defendant | : |

**RICHARD A. LLORET**                                                             **January 8, 2024**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

The Commissioner of Social Security, through the decision of an Administrative Law Judge ("ALJ"), denied Plaintiff Kyle James Roth's ("Plaintiff's") application for disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 401–434. The ALJ determined that Mr. Roth was not disabled under the Social Security Act and its regulations. R. 20.[1] Mr. Roth now requests review of the ALJ's decision. *See* Doc. No. 9. ("Pl. Br."). Because I find that the ALJ did not err, I affirm the ALJ's decision.

## PROCEDURAL HISTORY

On October 7, 2019, Mr. Roth filed a claim for disability insurance benefits and suppemental security income. R. 10. In his application, Mr. Roth alleges a disability onset date of June 28, 2019, citing anxiety, depression, schizophrenia, bipolar disorder, tremors, high blood pressure, and problems with his back, heart, hand, wrist, and arm.

---

[1] All references to the administrative record will be listed as "R. ____". The administrative record is document number eight on ECF.

1

R. 61–62, 231–253. Mr. Roth's application was denied at the initial level of review on February 10, 2020 (*see* R. 77, 78) and on reconsideration on November 19, 2020 (*see* R. 113, 114). On December 1, 2020, Mr. Roth requested a hearing before an ALJ. R. 144–145. The request was granted, and a hearing was held on March 19, 2021, at which Mr. Roth was represented by counsel. *See* R. 34–60. Both Mr. Roth and a Vocational Expert testified. *See id.* Following the hearing, the ALJ found that Mr. Roth was not disabled under the Social Security Act. R. 20. On February 24, 2022, the Appeals Council denied Mr. Roth's request for review, making the ALJ's determination a final determination. *See* R. 1–6. Mr. Williams then filed an appeal in this Court. Doc. No. 1.

## FACTUAL BACKGROUND

### A. The Claimant's Background

Mr. Roth was thirty-two years old on the alleged disability onset date, making him a younger individual under the regulations. R. 19; 20 C.F.R. §§ 404.1563. Mr. Roth completed high school and reported working previously as a roofer. R. 18–19, 39. Mr. Roth has not worked on a consistent basis as a result of his mental health issues, which have led to several inpatient psychiatric admissions. R. 39. Mr. Roth has not been employed since June 2019. R. 42.

### B. The ALJ's Decision

The ALJ found that Mr. Williams was not disabled under the Social Security Act during the relevant period. R. 20. In reaching this decision, the ALJ made the following

findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation process.[2]

Prior to step one, the ALJ determined that Mr. Roth met the insured status requirements of the Social Security Act.[3] R. 13. At step one, the ALJ confirmed that Mr. Roth had not engaged in substantial gainful activity during the alleged disability period. R. 13. At step two, the ALJ determined that Mr. Roth had two severe impairments: depressive disorder and anxiety disorder. R. 13. At step three, the ALJ compared Mr. Roth's impairments to those contained in the Social Security Listing of Impairments[4] and found that Mr. Roth's impairments, individually and jointly, did not meet or medically equate to the severity of one of the listed impairments. R. 13–14.

Prior to reviewing step four, the ALJ determined that Mr. Roth had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," but with a limitation that he "shall have no interaction with the general public and no more than occasional interaction with supervisors" and that he may "work in proximity with others but not in tandem with them or as part of a team." R. 14 (citing 20 C.F.R. §

---

[2] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether the claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration his residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

[3] When an applicant is seeking disability insurance benefits ("DIB"), the ALJ must determine the applicant's insured status. 20 C.F.R. § 404.101(a). If an applicant is "neither fully nor currently insured, no benefits are payable based on [the applicant's] earnings." *Id*. The applicant is able to recover DIB only through their last insured date. 42 U.S.C. § 423(a).

[4] The regulations contain a series of "Listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

3

416.967(a)). The ALJ further provided that Mr. Roth "would be off task up to but not in excess of ten percent of the workday." R. 14.

At step four, the ALJ determined that Mr. Roth is capable of performing his past work as a roofer. R. 18. In reaching that conclusion, the ALJ noted that Mr. Roth "has no exertional limitations, and no mental health limitations that would interfere with his past relevant work" and, in light of the testimony of the vocational expert, "this work is not precluded." R. 18. Although the ALJ determined that Mr. Roth was capable of performing past relevant work, he continued his analysis to step five. Here, he acknowledged that Mr. Roth was thirty-two years old on the alleged disability onset date, making him a "younger individual" under the guidelines. R. 19. The ALJ also noted that Mr. Roth had at least a high school education and that transferability of job skills was not material to the determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills." R. 19.

At step five, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy" that Mr. Roth can perform, including the job of a landscape laborer, commercial cleaner, and inspector." R. 18–19. The ALJ ultimately concluded that Mr. Roth was not disabled during the relevant period. R. 19–20.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential. I am bound by his findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranft v. Apfel*,

181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's factual conclusion is supported by substantial evidence, his disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

      Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

      The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). Accordingly, I can overturn an ALJ's decision based on an incorrect application of a legal standard even where I find that the decision otherwise is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (Katz, J.) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in his opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ must also address all pertinent evidence in the record. *See id.* at 121–22. When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain his resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

An ALJ's decision is to be "read as a whole." *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The question on review is whether, reading the ALJ's opinion as a whole against the record, the reviewing court can understand why the ALJ reached his decision and can identify substantial evidence in the record supporting that decision. *Caruso v. Commr. of Soc. Sec.*, 99 Fed. Appx. 376, 379 (3d Cir. 2004)).

## DISCUSSION

Mr. Roth, through counsel, presents a single issue for my review. Mr. Roth alleges that the ALJ's residual functional capacity determination is the product of legal error, because the ALJ failed to properly evaluate the medical opinion of Mr. Roth's treating mental health provider, Kathryn Keulmann, MSW. Pl. Br. at 3–11. The Commissioner responds that the RFC determination is supported by substantial evidence and argues that the ALJ properly considered the opinion and found it unpersuasive. Comm. Br. at 4–9. I find that the ALJ's decision accounts for all evidence of record and is soundly reasoned and free from legal error.

6

I.  **The ALJ properly considered the medical source opinion provided by Mr. Roth's treating mental healthcare provider.**

Mr. Roth alleges that the ALJ erred in his treatment of a mental capacity assessment by Mr. Roth's treating mental health provider, Kathryn Keulmann, MSW and that this error caused the ALJ to incorrectly assess the severity of Mr. Roth's mental health limitations when making the RFC determination. Pl. Br. at 4. The ALJ did not ignore Ms. Keulmann's assessment outright, rather the ALJ determined that the assessment was unpersuasive because "Ms. Keulmann rendered her opinion less than two weeks after meeting with the claimant for the first time" and because "she fails to cite clinical findings or other evidence to explain or support her opinions." R. 17–18.

Under the regulations, a "medical opinion" is "a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he] [has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 404.1513(a)(2). When evaluating medical source opinions, the ALJ must articulate how he considered the medical opinion including "how persuasive [he] find[s] a medical source's medical opinions" to be. 20 C.F.R. § 416.920c(b). In doing so, the ALJ should consider the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c).

On March 19, 2021, almost a year-and-a-half after Mr. Roth filed his claims with the Social Security Administration, Ms. Keulmann completed a mental impairment questionnaire indicating her assessment of Mr. Roth's "ability to do work-related activities on a day-to-day basis in a regular work setting." R. 927. The questionnaire required Ms. Kuelmann to check boxes indicating whether Mr. Roth demonstrated "none," "slight," "moderate," "marked," "extreme," or "unknown" limitations in various

7

areas of functioning. *See* 927–930. In the questionnaire, Ms. Keulmann notes that she had been treating Mr. Roth since March 5, 2021 and that she did not know how long Mr. Roth had experienced the limitations and restrictions she identified. R. 930.

Regarding Mr. Roth's "Understanding & Memory," Ms. Keulmann determined that he had a "moderate" limitation in his ability to understand and remember detailed instructions. R. 927. In the area of "Sustained Concentration & Persistence," Ms. Keulmann concluded that Mr. Roth had a "moderate" impairment in his ability to carry out detailed instructions. R. 927. Mr. Keulmann also concluded that Mr. Roth had "marked" impairments in his ability to maintain attention and concentration for extended periods, his ability to complete a normal workday or workweek without interruptions from psychologically based symptoms. R. 927. Regarding Mr. Roth's "Social Interaction," Ms. Keulmann concluded that Mr. Roth had "moderate" impairments in his ability to interact appropriately with the general public and his ability to get along with coworkers or peers. R. 928. Ms. Keulmann found a "marked" impairment in Mr. Roth's ability to accept instructions and to respond appropriately to criticism from supervisors. R. 928.

In the same questionnaire, Ms. Keulmann noted that she did not know any of Mr. Roth's limitations in the "Adaption" category, which included the ability to respond appropriately to changes in work setting and the ability to travel in unfamiliar places or to use public transportation. R. 929. Mr. Keulmann also had no opinion regarding Mr. Roth's ability to remember locations and work-like procedures, to perform activities within a schedule, to sustain an ordinary routine without special supervision, to work in coordination with or in proximity to others without being distracted, to ask simple questions or request assistance, or to maintain socially appropriate behavior.

8

R. 927–929. Reviewing this information, and acknowledging fact that Ms. Keulmann rendered her opinion less than two weeks after meeting with the claimant for the first time, the ALJ determined that the submitted mental health assessment was not persuasive. *See* R. 17–18.

In dismissing this opinion, the ALJ noted that Ms. Keulmann "fails to cite clinical findings or other evidence to explain or support her opinions." R. 18. Mr. Roth claims that the ALJ erred in reaching this conclusion because "Ms. Keulmann provided brief statements within the assessment stating the diagnosis related to the limitation and accompanying symptoms[.]" Pl. Br. at 6. The Third Circuit has recognized "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). The reliability of such opinions is suspect when they are unaccompanied by thorough written reports. *See id.* (citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)). Ms. Keulmann explanation of her conclusions, repeated throughout the form, is as follows: "Member is diagnosed with F41.9 [Unspecified Anxiety Disorder] and F31.9 [Bipolar Disorder]. Member reports difficulty recalling information and has frequent panic attacks." R. 927, 928. This "explanation" is a conclusory acknowledgment that Mr. Roth is diagnosed with anxiety disorder and bipolar disorder. Ms. Keulmann does not explain why such a diagnosis would cause the limitations she indicated, nor does she provide any report documenting her examination of Mr. Roth or cite any specific findings as support for her assessment.

The ALJ addressed Ms. Keulmann's mental capacity assessment and sufficiently explained his reasons for finding it unpersuasive. He specifically determined that Ms. Keulmann's conclusions regarding Mr. Roth's mental capacity were not supported

9

by specific facts in the record. R. 18. He also noted that the persuasive value of her opinion was limited, given the short length of her relationship with Mr. Roth at the time the opinion was entered. R. 17. Accordingly, the ALJ did not err in finding Ms. Keulmann's opinion unpersuasive. *See e.g.*, *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (noting the Commissioner has an obligation to weigh medical evidence and make choices between conflicting accounts).

My review of the ALJ's findings of fact is limited to determining if substantial evidence supports the decision. *Hartranaft*, 181 F. 3d at 360 (citing 42 U.S.C. § 405(g)). Because the ALJ properly explained his reasons for finding Ms. Keulmann's opinion unpersuasive, I find no error here.

## II. The ALJ's decision is supported by substantial evidence.

Having determined that the ALJ appropriately weighed Ms. Keulmann's mental capacity assessment, I find that the ALJ's opinion is supported by substantial evidence.

At step two, the ALJ determined that Mr. Roth had two severe impairments: depressive disorder and anxiety disorder. R. 13. A severe impairment occurs when there is an "impairment or combination of impairments which significantly limits [the applicant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions; "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

The ALJ found that Mr. Roth's depressive disorder and anxiety disorder were severe impairments that "significantly limit the ability to perform basic work activities[.]" R. 13. The ALJ went on to explain that Mr. Roth's GERD, irritable bowel

10

syndrome, and hypertension were not severe impairments because "there is no evidence that said conditions lasted for more than twelve months or limit the claimant's ability to perform basic work activities[.]" R. 13. The ALJ concluded step two by noting that Mr. Roth's alleged PTSD, essential tremors, back problem, hand/wrist/arm problem, and heart problem, were not medically determinable impairments because "the claimant's record contains no objective evidence of these impairments." R. 13.

At step three, the ALJ determined that Mr. Roth's impairments did not meet or medically equal the criteria of Listings 12.04 (Depressive, Bipolar, and Related Disorders)[5] or 12.06 (Anxiety and Obsessive Compulsive Disorders)[6]. R. 13. The ALJ's analysis outlined the evidence needed to establish an impairment under these listings. *Id.* (citing 20 C.F.R. 404, Subpart P, Appx. 1). The ALJ then considered whether

---

[5] A claimant meets or medically equals Listing 12.04 (Depressive, bipolar and related disorders) when he either satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.

To satisfy the paragraph A criteria, a claimant must show medical documentation of depressive disorder or bipolar disorder. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(a). To satisfy the Paragraph B criteria of listing 12.04, a claimant must demonstrate that his affective disorder results in "extreme limitation of one, or marked limitation of two" of the following areas of mental functioning:

    1. Understand, remember, or apply information.
    2. Interact with others.
    3. Concentrate, persist, or maintain pace.
    4. Adapt or manage oneself.

*Id.* at § 12.04(b). To satisfy the Paragraph C criteria, a claimant must demonstrate that he has "a medically documented history of the existence of the disorder over a period of at least 2 years" and there is evidence of both ongoing treatment and a "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life[.]" *Id.* at § 12.04(c).

[6] A claimant meets or medically equals Listing 12.06 (Anxiety and obsessive-compulsive disorders) when he either satisfies both the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.06.

To satisfy the paragraph A criteria, a claimant must show medical documentation of anxiety disorder, panic disorder or agoraphobia, or obsessive-compulsive disorder. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.06(b). The remaining requirements are identical to the requirements under Listing 12.04, outlined above.

Mr. Roth's conditions satisfied the "Paragraph B" or "Paragraph C" criteria of either Listing 12.04 or 12.06, which are identical. R. 13.

To satisfy "Paragraph B," the claimant's mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. R. 13. A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis, while an "extreme" limitation is an inability to function independently, appropriately, or effectively on a sustained basis. R. 13.

The ALJ determined that Mr. Roth has a mild limitation in the area of understanding, remembering, or applying information. R. 13. In reaching that conclusion, the ALJ explained that, while Mr. Roth has difficulty remembering and understanding things, his mental status examinations indicate he has "an intact recent and remote memory" and his "thought processes were normal and he was fully oriented." R. 13–14. The ALJ found that Mr. Roth has a moderate limitation in his ability to interact with others. R. 14. While the ALJ acknowledged that Mr. Roth has a history of "anger issues and aggressive outbursts" including an incident where he punched another patient while he was hospitalized due to his mental health symptoms, the ALJ found that Mr. Roth generally gets along with authority figures. R. 14. The ALJ similarly found that Mr. Roth has a moderate limitation in the area of concentrating, persisting or maintaining pace due to "racing thoughts and auditory hallucinations" which could "reasonably interfere with his ability to concentrate, persist, or maintain pace." R. 14. Finally, the ALJ determined that Mr. Roth has a moderate limitation in the area of adapting or managing oneself finding that, while Mr. Roth can physically take care of himself, "he lacks the judgment to take medication when necessary and to take

the proper medication." R. 14. Because the ALJ did not find at least two "marked" limitations or one "extreme" limitation, he determined that the "Paragraph B" criteria were not satisfied.

The ALJ went on to find that Mr. Roth similarly did not satisfy the "Paragraph C" criteria. R. 14. The ALJ reviewed the requirements under that paragraph and found that "the evidence fails to establish that the claimant has no more than minimal capacity to adapt to changes in the environment or to demands that are not already part of [his] daily life." R. 14

Prior to step four, the ALJ determined Mr. Roth's residual functional capacity, or "the most [Mr. Roth] can still do despite [his] limitations." 20 C.F.R. § 416.945. After careful consideration of the entire record, the ALJ concluded that Mr. Roth has the residual functional capacity to perform a full range of work, subject to certain nonexertional limitations. R. 14–18. The ALJ determined that Mr. Roth: "shall have no interaction with the general public and no more than occasional interaction with supervisors" and that he may "work in proximity with others but not in tandem with them or as part of a team." R. 14 (citing 20 C.F.R. § 416.967(a)). The ALJ further provided that Mr. Roth "would be off task up to but not in excess of ten percent of the workday." R. 14. The ALJ spent approximately four pages reviewing the evidence in the record. *See* R. 14–18. Such evidence includes Mr. Roth's testimony and function report (R. 15 (citing R. 318–326)); psychiatric hospital records from June 2019 (R. 16 (citing R. 440–499)); psychiatric hospital records from July 2019 (R. 16 (citing R. 518–525)); emergency department records from March 2020 (R. 16 (citing R. 587–665)); addiction treatment records from June 2020 (R. 16–17 (citing R. 528–562)); gastroenterology records from 2020 and 2021 (R. 17 (citing R. 563–586, 887–902)); psychiatric hospital

records from December 2020 (R. 17 (citing R. 666–796)); the mental health assessment provided by Kathryn Keulmann, MSW (R. 17–18 (citing R. 925–930); and assessments from four state medical consultants (R. 18 (citing R. 61–68, 79–95).

In light of the listed evidence, the ALJ determined that Mr. Roth's testimony "about the intensity, persistence, and limiting effects" of his symptoms is "inconsistent," given that Mr. Roth "is able to take care of his own needs, maintain a two year relationship with his girlfriend, shop for what ne needs and care for his grandparents" as well as "cook meals for himself, walk to the corner store and socialize." R. 17. The ALJ further noted that, while Mr. Roth "does not do household chores . . ., that is more because he does not get along with his mother than a physical impairment." R. 17.

The ALJ went on to discuss the persuasiveness of various medical opinions in the record. The ALJ found the opinions of Ms. Keulmann and state medical consultants Dr. Gene Whang, Dr. Frank Mrykalo, and Dr. Ruth Arnold to be "unpersuasive." R. 17–18. As discussed, the ALJ discounted Ms. Keulmann's assessment given the length of her relationship with Mr. Roth and because "she fails to cite clinical findings or other evidence to explain or support her opinions." R. 17–18. The ALJ also found the opinions of each of the three listed state medical consultants to be unpersuasive. R. 18. When they submitted their assessments, each of the consultants determined that there was insufficient evidence in the record for them to assess the severity of Mr. Roth's impairments. R. 18. The ALJ determined that, by the time of his opinion, the record had been developed and was "sufficient to render a residual functional capacity." R. 18.

The ALJ found the opinion of state psychological consultant Dr. John Gavazzi to be "persuasive" as to his conclusions regarding Mr. Roth's "Paragraph B" limitations. R. 18. Based upon his review of Mr. Roth's medical records and functional report,

14

Dr. Gavazzi determined that Mr. Roth "had mild limitations in understand, remember or apply information" and "moderate limitations in interact with others, concentrate, persist or maintain pace and adapt or manage oneself." R. 18. Dr. Gavazzi determined Mr. Roth was capable of performing "simple, routine, repetitive tasks in a stable environment." R. 18.

The ALJ ultimately concluded that, due to a lack of evidence of Mr. Roth's alleged physical impairments, Mr. Roth's residual functional capacity would not require any exertional limitations. R. 18. The ALJ further determined that, due to his documented mental health impairments, Mr. Roth would be "limited with his interaction with others as well as his concentration, thus needing to be off task up to ten percent of the workday." R. 18.

At step four, the ALJ determined that Mr. Roth's RFC did not preclude his past work as a roofer. R. 18. In reaching this conclusion, he relied on testimony from the Vocational Expert who noted that Mr. Roth's past work is not precluded because he has no physical limitations and because his mental health limitations are not the type that would interfere with his ability to perform that work. R. 18. The ALJ continued his analysis to step five, where he concluded that, "in addition to past relevant work, there are other jobs that exist in significant numbers in the national economy" that Mr. Roth is capable of performing, considering his age, education, experience, and RFC. R. 18. A page of the opinion is dedicated to reviewing the available alternative work and Mr. Roth's capacity to perform it. R. 18–19. The review included analysis of the Vocational Expert's testimony, which the ALJ concluded was consistent with the Dictionary of Occupational Titles. R. 19. The ALJ acknowledged that Mr. Roth is not able to perform the full range of unskilled work, given his nonexertional limitations.

15

R. 19. The Vocational Expert testified that, given his age, education, work experience, and RFC, Mr. Roth would be able to perform the requirements of the following representative occupations: landscape laborer (SVP 2, heavy), commercial cleaner (SVP 2, heavy) and inspector (SVP 2, light). R. 19.

Taking this analysis into consideration, the ALJ determined that Mr. Roth was not under a disability, as defined in the Social Security Act, during the relevant period. Because the ALJ's decision was reasonably supported by substantial evidence, I will uphold his decision and deny Mr. Roth's claim for relief.

## CONCLUSION

Because I find no error in the ALJ's analysis, the decision of the ALJ is affirmed, and the appeal dismissed. I will enter an Order and Judgment accordingly.

                    BY THE COURT:

                    *s/ Richard A. Lloret*
                    **RICHARD A. LLORET**
                    **U.S. Magistrate Judge**